FENNEMORE CRAIG
Ray K. Harris (No. 007408)
Susan M. O (No. 020596)
3003 North Central Avenue
Suite 2600
Phoenix, Arizona  85012-2913
Telephone:  (602) 916-5000
Email:  rharris@fclaw.com
Email:  smo@fclaw.com

Attorneys for Defendant
PC Onsite, LLC, Casey Hagon
and Garland Pierce

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Dream Games of Arizona, Inc.; et al. | No. CIV '03 0433 EHC |
| Plaintiffs, | **DEFENDANTS' REQUESTED JURY INSTRUCTIONS** |
| v. | |
| PC Onsite, LLC, et al., | |
| Defendants. | |

Defendants PC Onsite, LLC, Casey Hagon and Garland Pierce respectfully request the Court to instruct the jury according to the attached instructions in addition to the Joint Jury Instructions.

DATED this 27th day of September, 2006.

FENNEMORE CRAIG


By s/ Susan M. O
 Ray K. Harris
 Susan M. O
 Attorneys for Defendants

FENNEMORE CRAIG
PROFESSIONAL CORPORATION
PHOENIX

1760295

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2006, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

> Marvin A. Glazer
> Cahill von Hellens & Glazer
> 2141 E. Highland Avenue
> Suite 155
> Phoenix, Arizona  85016-4737
> mglazer@cvglaw.com

s/ Susan M. O

FENNEMORE CRAIG
PROFESSIONAL CORPORATION
PHOENIX

1760295

**DEFENDANTS' REQUESTED INSTRUCTION NO. ___**

<u>Valid Copyright</u>

If evidence shows the Copyright Office was provided with false information, or information was withheld by Dream Games that might have resulted in rejection of the copyright application, then the registration is invalid.

Dream Games has the burden to "prove all of the multitude of fact underlying the copyright validity."

Source: 17 U.S.C. § 410(c); <u>Tempo Music, Inc. v. Famous Music Corp.</u>, 838 F. Supp. 162, 167 (S.D.N.Y. 1993) (quoting <u>Durham Indus. Inc. v. Tomy Corp.</u>, 630 F.2d 905, 908 (2d Cir. 1980)); <u>Carol Barnhart, Inc. v. Economy Cover Corp.</u>, 773 F.2d 411, 414 (2d Cir. 1985); <u>Sparaco v. Lawler, Matusky, Skelly Engineers, LLP</u>, 60 F. Supp.2d 247. 251 (S.D.N.Y. 1999); <u>Gates Rubber Co. v. Bando Chemical Industries, Ltd.</u>, 9 F.3d 823 (10th Cir. 1993); <u>Masquerade Novelty, Inc. v. Unique Industries, Inc.</u>, 912 F.2d 663, 667 (3rd Cir. 1990).

GIVEN_____
REFUSED_____
GIVEN AS MODIFIED_____
REFUSED AS COVERED_____
WITHDRAWN_____

FENNEMORE CRAIG
PROFESSIONAL CORPORATION
PHOENIX

1760295

**DEFENDANTS' REQUESTED INSTRUCTION NO. ___**

<u>Protected Elements</u>

The mere fact that Fast Action Bingo is copyrighted does not mean that every element of the work may be protected. There are elements of a copyrighted work that are not protected even against intentional copying. It is a fundamental principle of copyright law that ideas, concepts, and processes are not protected from copying. The idea of a bingo game is available for anyone to use and is not itself protected from copying. A copyright does not give Dream Games exclusive rights over all video bingo games.

Copyright protection does not extend to works in the "public domain." Bingo cards and numbers are in the public domain. Any similarity in the bingo cards and numbers that were in the public domain should not be considered in determining similarity of screen displays. Bingo cards, called numbers (often printed on balls), a key describing winning patterns and corresponding prizes, and the player's balance and winnings, are all elements of a video bingo game that are not protected by copyright.

If there are elements of the accused screen displays that are "as a practical matter indispensable, or at least standard, in the treatment" of a video bingo game, then those elements are not protected.

Dream Games bears the burden of proving specific elements of the Fast Action Bingo [software and] screen displays are protected by copyright.

In determining virtual identity, the Court will identify the material that is protectable and only the protectable material is to be reviewed for virtual identity.

Dream Games is limited to proof of copying of the following four aspects it has identified:

      1)    Labels for fields and menu items;

      2)    Screen that displays when a player wins;

      3)    Labels of items on the ending shift report; and

   4) Types of employee users.

SOURCE: Feist Publications, Inc. v. Rural Tel. Serv. Co, 499 U.S. 340, 348, 111 S.Ct. 1282 (1991); Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994), cert denied, 513 U.S. 1184 (1995); Cooling Sys. & Flexibles v. Stuart Radiator, 777 F.2d 485, 492-93 (9th Cir. 1985) (overruled on other grounds recognized by Jackson v. Axton, 25 F.3d 884 (9th Cir. 1994) (addressing attorney fee issue)); Attia v. The Society of New York Hospital, 201 F.3d 50, 58 (2nd Cir. 1999); 4 Nimmer Copyright § 13.03[B][2][b], at 13-63, 13-58 (1998); 17 U.S.C. § 102(b); Incredible Technologies, Inc. v. Virtual Technologies, Inc., 400 F.3d 1007 (7th Cir. 2005).

GIVEN _____
REFUSED _____
GIVEN AS MODIFIED _____
REFUSED AS COVERED _____
WITHDRAWN _____

**DEFENDANTS' REQUESTED INSTRUCTION NO. ___**

<u>Copying</u>

Dream Games claims that PC Onsite copied copyrighted Fast Action Bingo software to create the Quick Play Bingo game. To prove copying, Dream Games must show that PC Onsite had access to the Fast Action Bingo software and that PC Onsite's Quick Play Bingo game is virtually identical to Fast Action Bingo.

Access to the Fast Action Bingo screens is not disputed. Dream Games, however, bears the burden of proving PC Onsite's Quick Play Bingo game is virtually identical to protected elements of the Fast Action Bingo game to show copying.

SOURCE:   <u>Kouf v. Walt Disney Pictures & Television</u>, 16 F.3d 1042, 1044 n.2 (9th Cir. 1994); <u>Brown Bag Software v. Symantec Corp.</u>, 960 F.2d 1465, 1472 (9th Cir. 1992), <u>cert. denied</u>, 506 U.S. 869, 113 S.Ct. 198 (1992).

GIVEN_____
REFUSED_____
GIVEN AS MODIFIED_____
REFUSED AS COVERED_____
WITHDRAWN_____

FENNEMORE CRAIG
PROFESSIONAL CORPORATION
PHOENIX

1760295

- 4 -

**DEFENDANTS' REQUESTED INSTRUCTION NO. \_\_\_**

Only virtually identical copying is prohibited in this case. Some elements of the disputed computer screens are "as a practical matter indispensable or at least standard in the treatment" of a video bingo game. Infringement should not be found absent "bodily appropriation of expression," by "copying or unauthorized use of substantially the entire item."

If almost all the similarities spring from the basic ideas of a video bingo game, then illicit copying could occur only if the works as a whole are virtually identical.

SOURCE:   Apple Computer, Inc. v. Microsoft Corp., 799 F. Supp. 106, 134, 821 F.Supp. 616, 623 (N.D. Cal. 1993) (quoting Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 205 (9th Cir. 1989)), aff'd, 35 F.3d 1435, 1447 (9th Cir. 1994); Frybarger v. IBM Corp., 812 F.2d 525, 530 (9th Cir. 1987); see Aliotti v. R. Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987); Data East U.S.A., Inc. v. Epyx, Inc., 862 F.2d 204, 208 (9th Cir. 1988).

GIVEN_____
REFUSED_____
GIVEN AS MODIFIED_____
REFUSED AS COVERED_____
WITHDRAWN_____

**DEFENDANTS' REQUESTED INSTRUCTION NO. ___**

A copyright owner is entitled to exclude others from creating derivative works based upon the owner's copyrighted work. The term derivative work refers to a work based on one or more pre-existing works, such as a translation or any other form in which the pre-existing work is recast, transformed or adapted. The owner of a copyrighted work is entitled to exclude others from recasting, transforming or adapting the copyrighted work without the owner's permission.

A derivative work is not an infringing work if the borrowed or copied material in the derivative work was taken with the consent of the copyright owner of the prior work.

**SOURCE:** Ninth Circuit Model Civil Jury Instructions No. 20.13 (2002); Micro Star v. Formgen, 154 F.3d 1107, 1112 (9th Cir. 1998); 1 M. Nimmer & D. Nimmer, Nimmer on Copyright § 3.01 (2000).

GIVEN_____
REFUSED_____
GIVEN AS MODIFIED_____
REFUSED AS COVERED_____
WITHDRAWN_____

**DEFENDANTS' REQUESTED INSTRUCTION NO. ___**

To constitute copyright infringement, the screens generated by the Quick Play Bingo program must include the protected expressive elements of the screens generated by the copyrighted Fast Action Bingo software and these protected elements must be virtually identical.

You may find infringement of Dream Games' screen displays only if you determine that the only differences between Fast Action Bingo screen displays and Quick Play Bingo screen displays were minor variations which were included for the purpose of avoiding the direct appearance of copying but involved no original creative thought.

**SOURCE:** See v. Durang, 711 F.2d 141, 143 (9th Cir. 1983); Computer Associates Int'l, Inc. v. Altai, Inc., 892 F.2d 693, 710 (2d Cir. 1992); 3 Nimmer, Copyright § 13.03[E][3]; Sid & Marty Kroft Television Productions, Inc. v. McDonalds Corp., 562 F.2d 1157 (9th Cir. 1977); Shaw v. Linheim, 919 F.2d 1353 (9th Cir. 1990); North Coast Ind. v. Jason Maxwell, Inc., 972 F.2d 1031, 1033 (9th Cir. 1992); Kregos v. Associated Press, 3 F.3d 656, 663 (2d Cir. 1993).

GIVEN_____
REFUSED_____
GIVEN AS MODIFIED_____
REFUSED AS COVERED_____
WITHDRAWN_____

**DEFENDANTS' REQUESTED INSTRUCTION NO. ___**

If you find that Dream Games is entitled to damages for copyright infringement, the relevant time period for you to consider is from the beginning of the infringement until the time the infringement ceased, up to the date Quick Play Bingo game was no longer offered. The beginning of the infringement is the first act of infringement in a series of ongoing discrete infringements.

Dream Games alleges that PC Onsite infringed the Fast Action Bingo game. The first act of infringement is PC Onsite's writing of the Quick Play Bingo software that copies protected elements of the Fast Action Bingo game. If PC Onsite was initially authorized to copy the software under an implied license, the first act of infringement is when negotiations broke down and PC Onsite was no longer authorized to copy the software, and PC Onsite made a copy of the computer program by loading the program thereby creating a copy of the program on the computer's RAM.

SOURCE:   Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513, 526 (10th Cir. 1987); Johnson v. Jones, 47 U.S.P.Q.2d 1481 (6h Cir. 1998); RPM Management, Inc. v. Apple, 943 F. Supp. 8937 (S.D. Ohio 1996); 2 Nimmer, Copyright § 7.16(C)(1) at 7-170 (2000) (footnotes omitted); Mason v. Montgomery Data, Inc., 967 F.2d 135, 143 (5th Cir. 1992); Mai Systems Corp v. Peak Computer, Inc., 991 F.2d 511 (9th Cir. 1993).

GIVEN_____
REFUSED_____
GIVEN AS MODIFIED_____
REFUSED AS COVERED_____
WITHDRAWN_____

## DEFENDANTS' REQUESTED INSTRUCTION NO. ___

Any person who claims damages as a result of an alleged wrongful act of another has a duty under the law to "mitigate" those damages. Dream Games cannot recover, and does not claim, copyright damages for any profits which it may have lost after the allegedly infringing Quick Play Bingo ceased to be offered. Dream Games also cannot recover copyright damages for any lost profits attributable for Dream Games' removal of its Fast Action Bingo game before the allegedly infringing Quick Play Bingo ceased to be offered. Dream Games must mitigate damages by continuing to operate its Fast Action Bingo game.

SOURCE: U.S. v. King Features Entertainment, 843 F.2d 349, 400 (9th Cir. 1988); Dratler, Intellectual Property Law: Commercial Creative and Industrial Property § 12.02[1] at 12-10 n.37 (1994); Chronicle Pub. Co. v. Legrand, 24 U.S.P.Q.2d 1881 (N.D. Cal. 1992)

GIVEN_____
REFUSED_____
GIVEN AS MODIFIED_____
REFUSED AS COVERED_____
WITHDRAWN_____

**DEFENDANTS' REQUESTED INSTRUCTION NO. \_\_\_\_**

Dream Games cannot recover profits derived from parts of Quick Play Bingo that do not infringe Fast Action Bingo. Dream Games bears the burden of proving what proportion of its damages clearly arise from the infringed part of Quick Play Bingo.

SOURCE: Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 404, 60 S.Ct. 681 (1940); Cream Records, Inc. v. Jos Schlitz Brewing Co., 754 F.2d 826, 828 (96h Cir. 1985); Aerospace Services Intern. v. LPA Group Inc., 1992 WL 12000194 (N.D.Ga. 1992)

GIVEN_____
REFUSED_____
GIVEN AS MODIFIED_____
REFUSED AS COVERED_____
WITHDRAWN_____

**DEFENDANTS' REQUESTED INSTRUCTION NO. \_\_\_\_\_**

In addition to licensing the Quick Play Bingo software, PC Onsite sold computer hardware. The revenue attributable to the sale of computer hardware should also be subtracted from PC Onsite's gross revenue in determining PC Onsite's profit.

SOURCE:  17 U.S.C. § 504; Three Boys Music Corp. v. Bolton, 212 F.3d 477, 487 (9th Cir. 2000); Cream Records v. Joseph Schlitz Brewing Co., 754 F.2d 826, 828-29 (9th Cir. 1985); Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 519 (9th Cir. 1985); Bonner v. Dawson, 404 F.3d 290, 294 (4th Cir. 2005).

GIVEN_____
REFUSED_____
GIVEN AS MODIFIED_____
REFUSED AS COVERED_____
WITHDRAWN_____

**DEFENDANTS' REQUESTED INSTRUCTION NO. \_\_\_\_**

When a contract has been breached, the party that did not breach is required to make reasonable efforts to mitigate his damages. If you find that PC Onsite entered into an agreement with Dream Games to develop an electronic video bingo game and Dream Games breached that agreement by failing to pay PC Onsite for the development of the game, then PC Onsite is entitled to mitigate its damages by asserting a license of the Quick Play Bingo software and contracting with City Entertainment. PC Onsite does not infringe Dream Games' copyright in Fast Action Bingo by taking necessary steps to mitigate its damages.

SOURCE:   McCoy v. Mitsuboshi Cutlery, Inc., 67 F.3d 917 (Tex. 1995); Platt & Munk Co. v. Republic Graphics Inc., 315 F.2d 847 (C.A.N.Y. 1963).

GIVEN_____
REFUSED_____
GIVEN AS MODIFIED_____
REFUSED AS COVERED_____
WITHDRAWN_____

**DEFENDANTS' REQUESTED INSTRUCTION NO. ___**

<u>Good Faith and Fair Dealing</u>

A party to a contract has a duty to act fairly and in good faith. This duty is implied by law and need not be in writing.

This duty requires that neither party do anything that prevents the other party from receiving the intended benefits of their agreement.

PC Onsite also alleges that Dream Games distributed a game that is illegal and failed to advise PC Onsite of the illegality or the measures necessary to render the game legal, thereby inducing PC Onsite to incur unnecessary expense in writing and developing an illegal video Bonanza bingo game.

If you find that Dream Games has breached the duty of good faith and fair dealing, PC Onsite is entitled to recover damages proved by the evidence to have resulted naturally and directly from the breach.

SOURCE: RAJI (Civil) 4th ed. Contract 16; <u>Taylor v. State Farm Mut. Auto Ins. Co.</u>, 175 Ariz. 148, 854 P.2d 1134 (1993); <u>Rawlings v. Apodaca</u>, 151 Ariz. 149, 153-54, 726 P.2d 565, 569-70 (1986); <u>Wagenseller v. Scottsdale Memorial Hosp.</u>, 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985); <u>Miel v. State Farm Mut. Auto. Ins. Co.</u>, 185 Ariz. 104, 109, 912 P.2d 1333, 1338 (App. 1995); <u>Nelson v. Phoenix Resort Corp.</u>, 181 Ariz. 188, 197, 888 P.2d 1375, 1384 (App. 1994); <u>Southwest Sav. & Loan Ass'n v. SunAmp Systems</u>, 172 Ariz. 553, 557, 838 P.2d 1314, 1318 (App. 1992); <u>Oldenburger v. Del E. Webb Dev. Co.</u>, 159 Ariz. 129, 132, 765 P.2d 531, 534 (App. 1988).

GIVEN_____
REFUSED_____
GIVEN AS MODIFIED_____
REFUSED AS COVERED_____
WITHDRAWN_____